UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HILLIARD WILLIAMS, | No. 2:14-cv-1248 KJM AC P |
| Plaintiff, | |
| v. | ORDER and |
| JAROM A. DASZKO, et al., | FINDINGS AND RECOMMENDATIONS |
| Defendants. | |

I. Introduction

Plaintiff is a state prisoner who proceeds pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983. This action proceeds on plaintiff's original verified complaint filed May 21, 2014. See ECF No. 1. Upon screening the complaint pursuant to 28 U.S.C. §1915A(a), this court found that it states Eighth Amendment claims against defendants Jarom A. Daszko, M.D. and David Mathis, M.D., for deliberate indifference to plaintiff's serious medical needs. See ECF No. 8 at 1-2. Defendants answered the complaint. ECF Nos. 15, 17. Discovery proceeded through April 30, 2015. ECF No. 18. Thereafter, defendants, who are represented by separate counsel, filed separate motions for summary judgment premised on plaintiff's alleged failure to exhaust his administrative remedies before commencing this action. ECF Nos. 19, 21. Plaintiff filed oppositions to each motion, ECF Nos. 24, 27; defendants filed replies, ECF Nos. 26, 28. Thereafter, plaintiff filed a further opposition (surreply) to defendant

Mathis' motion for summary judgment (also relevant to defendant Daszko's motion for summary judgment), ECF No. 33, which defendants seek to strike and/or respond to with additional briefing.

These matters are referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the reasons that follow, this court recommends that defendants' motions for summary judgment be denied.

II.     Plaintiff's Surreply

Both defendants object to plaintiff's surreply, ECF No. 33, on the ground that it was filed without court authorization, see ECF Nos. 35-6. Defendant Mathis moves to strike the filing, ECF No. 36, and defendant Daszko requests an opportunity to respond if the court chooses to rely on it, ECF No. 35 at 4.

Neither the Local Rules nor the Federal Rules authorize, as a matter of right, the filing of a surreply. Nevertheless, a district court may consider the substance of a surreply "where a valid reason for such additional briefing exists." Hill v. England, 2005 WL 3031136, at *1, 2005 U.S. Dist. LEXIS 29357 (E.D. Cal. Nov. 8, 2005) (Case No. 1:05-cv-0869 REC TAG). In the instant case, the court finds good cause to consider the substance of plaintiff's surreply. Its filing is reasonable in light of plaintiff's pro se status and the staggered filing of defendants' separate motions for summary judgment. The filing contains a more thorough opposition to defendant Mathis' motion for summary judgment than that previously filed by plaintiff (for example, it contains his statement of undisputed and disputed facts), and it includes new information concerning plaintiff's relevant administrative appeal.

In light of the recent decision of the United States Court of Appeals for the Ninth Circuit, in Reyes v. Smith, __ F. 3d __, 2016 WL 142601, 2016 U.S. App. LEXIS 433 (9th Cir. Jan. 12, 2016) (Case No. 13-17119), further responsive briefing by defendants would not be helpful.

Accordingly, this court denies defendant Mathis' motion to strike, ECF No. 36, and defendant Daszko's request to submit further briefing, ECF No. 35 at 4.

////

////

2

III.     Allegations of Plaintiff's Verified Complaint and Declarations

Plaintiff Hilliard Williams has at all relevant times been an inmate at the California Medical Facility (CMF) in Vacaville.  Pursuant to his verified complaint, plaintiff alleges that in the early morning hours of September 7, 2012, while he was sleeping, another inmate in his dormitory threw boiling liquid onto plaintiff's face, upper body, arms and hands, resulting in second and third degree burns.  Compl., ECF No. 1 at ¶ 17.  Plaintiff was immediately treated at CMF's B-1 Clinic's Emergency Room and then transferred to San Joaquin General Hospital.  Id. at ¶¶ 18-19.  At both locations, plaintiff was administered intravenous fluids including morphine. Id. at ¶ 18.  Plaintiff was returned to CMF later the same day, but then taken to the U.C. Davis Burn Center for outpatient treatment.  Id. at ¶ 20.  Plaintiff was not provided additional pain medication as an outpatient at the Burn Center, and was returned to CMF later than day.  Id.

Plaintiff alleges that upon his return to CMF he was "suffering from extreme and acute pain . . . secondary to being cooked alive, only a few short hours earlier."  Id. at ¶ 21.  However, he was denied further pain medication for the following reason, id.:

> Plaintiff was denied any additional pain medication by the defendants based upon a policy that only a patient's Primary Care Physician (PCP) could prescribed pain medication or change the dose of pain medication that any given individual was receiving. And at that time, the plaintiff's PCP was unfortunately unavailable due to his being on a two or three week vacation.

Plaintiff alleges that he repeatedly notified the prison's B-1 Clinic that his pain was becoming worse.  However, "he was repeatedly turned away by the defendants and told that he would have to wait for his own [PCP] to return from vacation because no one other than his own PCP could change his pain medications pursuant to some in-house policy."  Id. at ¶ 23.

Plaintiff alleges that he developed a fever and felt ill on September 11, 2012, and sought treatment at the B-1 Clinic's Emergency Room.  Initially he was "once again coldly rebuffed and cast aside and again told that he had to wait until his own [PCP] returned from vacation in a week or two before he could obtain additional treatment[.]"  Id. at ¶ 24.  After returning to his housing unit, plaintiff became more ill and fell while standing in the medication line.  He was then admitted to the B-1 Clinic's Emergency Room.  Id. at ¶ 25-6.  It was discovered that plaintiff had

a "dangerously high fever," and the burn on his right arm was infected. Id. at ¶ 27. Plaintiff was then transferred and admitted to the U.C. Davis Burn Center. Id.

As an admitted patient at the Burn Center, plaintiff was placed on intravenous antibiotics and "finally given additional and overdue pain medication." Id. at ¶ 28. Plaintiff remained at U.C. Davis for one week, with treatment that controlled his pain and reduced his infection. Id. at ¶ 29.

Plaintiff alleges that, upon his return to CMF, he was again denied pain medication on the ground that his PCP was still on vacation. Id. at ¶ 30. At each of his bandage changes at the B-1 Clinic, on at least September 19, September 20, and September 21, 2012, plaintiff's requests for pain medication were denied. Id. at ¶¶ 31-3. By September 21, plaintiff had asked four times to see the psychiatrist on duty, because "plaintiff was still not sleeping but was also now suffering from severe 'flash-backs' of the attack as well as nightmares," but his requests were denied. Id. at ¶¶ 34-5.

On September 24, 2012, when plaintiff went to the clinic to have his bandages changed, he noticed that his PCP, Dr. John Wieland, had returned from vacation and was working in the B-1 Clinic's Emergency Room. Id. at ¶ 36. Plaintiff states that "at that point, [he] was able to speak with [Dr. Wieland] who then immediately took over plaintiff's medical care and treatment and immediately provided plaintiff some much needed pain relief by increasing his prescribed pain medication to a level that provided relief[.]" Id. at ¶ 37.

The complaint alleges that defendants Daszko and Mathis were the "Primary Care Physician[s] who treated plaintiff at CMF in the institution's B-1 Emergency Room and while plaintiff['s] own Primary Care Physician was away on vacation during the relevant time period of this suit." (Id. at ¶¶ 5, 9).

Plaintiff's relevant administrative health care appeal, and the response granting the appeal at the first level, are included as exhibits to the verified complaint. See ECF No. 1 at 21-7; see also Decl. of W. Harris, CMF Health Care Appeals Coordinator, ECF No. 19-5 at ¶¶ 9-11, and Exs. B-D. The appeal, Health Care Appeal Log No. CMF HC 12037206, was signed by plaintiff on September 20, 2012, and file-stamped "received" on September 25, 2012. It is entitled

4

"DELIBERATE INDIFFERENCE TO THE PAIN AND SUFFERING OF AN INMATE." ECF No. 1 at 24. In Section A, plaintiff's described his grievance "issue" as follows, id. at 24, 26 (with minor edits):

> On or about 9/7/2012 and prior thereto, I was a victim of an unprovoked attack by another inmate and sustained second and third degree burns o[n] my body, face, neck and right arm. Although I have repeatedly asked for pain meds to address the severe pain that I am suffering, I have repeatedly been told that I need to see my own PCP [Primary Care Physician] for any pain medication. Presently, my assigned PCP is on vacation and I am told that I must wait [an] additional two (2) weeks before my health issues can be addressed. This is unacceptable that any human being can be allowed to suffer that pain that I am suffering while the so called CMF medical department turns a deaf ear and a blind eye to my pain and suffering. Since being severely burned, I have been denied proper medical care resulting in my burns becoming infected resulting in my having to be admitted to an outside hospital for treatment, something that should not have taken place. This after being refused any treatment at all by one of the CDCR's contracting outside hospitals because I had an appointment scheduled at another hospital at a later time. This is completely unacceptable! Allowing any fellow human being to wallow in the doldrums of a hell of unrelenting, agony (sic) of pain and anguish simply because no one cares, is not a penalty that was imposed upon me by any court of this State. Nor does such punishment comport with society's definition of humane punishment nor does it advance any type of legal, governmental policy, objective, or purpose, other than that of torture.

In Section B of the appeal, plaintiff sought the following relief, id. at 24, 26:

> (1) Provide me with the necessary and proper care and pain medication so that I am no longer needlessly suffering the severe pain from the burns that I received on or about 9/7/2012; (2) Take no type of retaliation against me for filing of this CDCR 602-HC Appeal, either directly or by proxy; (3) Provide me with immediate and adequate pain management for my severe injuries.

The appeal was accepted at the First Level Review on September 29, 2012, and assigned to plaintiff's PCP, Dr. Wieland. See ECF No. 1 at 24. Dr. Wieland interviewed plaintiff on October 16, 2012, and granted his appeal on the same date. Id.

A formal response was also prepared on October 16, 2012, by Dr. F. Rading, CCHCS Chief Physician and Surgeon for "Outpatient Services." Id. at 22-3. This response described plaintiff's appeal as follows: "Issue Type: Disagreement with Treatment (MD). Action Requested: (1) Provide proper care. (2) Provide pain medication. (3) No retaliation." Id. at 22

(with minor edits). After noting plaintiff's interview with Dr. Wieland on the same date, the formal response and decision provided in full, id. at 22-3:

> Response:
>
> The First Level Appeal, received September 25, 2012 indicated you sustained burns to your face, neck, arm and upper chest by another inmate. You were sent initially to Stockton, but then were sent to the UC Davis burn center since Stockton hospital is not a burn center. You were seen by their team and did have follow up dressing changes. Your skin wounds, while still sensitive, are healing.
>
> Your pain medications were not changed until several days later when Dr. Wieland saw you and temporarily increased your morphine.
>
> At the First Level of Review this appeal is GRANTED. You did get medical care, and Dr. Wieland eventually did increase your pain medication. Dr. Wieland explained that there is no intent or reason for retaliation.
>
> Your appeal with attachment(s), Unit Health Record (UHR), and all pertinent departmental policies and procedures was reviewed.
>
> Appeal Decision:
>
> Based upon the aforementioned information, your appeal is GRANTED.

The appeal response and decision were returned to plaintiff on October 26, 2012. Id. at 24.

In December 2012, plaintiff sought to resubmit his appeal for further review for the purpose of exhausting his administrative remedies. However, the matter was cancelled in January 2013 because the appeal had already been granted. See ECF No. 24 at 13-8.

Plaintiff has also submitted two verified declarations in support of his opposition to defendants' motions for summary judgment. See ECF No. 27-1 at 1-3; ECF No. 33 at 24-30. Plaintiff alleges therein that he did not know defendants' names until so informed by Dr. Wieland. Plaintiff states that during his interview on October 16, 2012, Dr. Wieland "looked up the medical records to see who had been the doctors that refused to provide me with adequate pain medication," and identified "these doctors . . . as the two defendants in this case, Drs. Daszko and Mathis." Pl. Decl., ECF No. 33 at 28-9, ¶ 22; see also id. at ¶¶ 21, 23.

6

In addition, plaintiff states that his appeal, which is typed, was prepared by inmate Birrell, "Special Representative" with CMF's Men's Advisory Council (MAC). See ECF No. 33 at 9, 13. Plaintiff states that he requested the assistance of Birrell in preparing his appeal because plaintiff's right arm was "so burned and non-usable." Pl. Decl., ECF No. 33 at 27-8, ¶ 17. Plaintiff also states that when he met with Birrell, "due to my lack of sleep, and mental confusion because of the severe pain that I was being forced to suffer, I had trouble remembering the facts of everything that had taken place including all of the medical staff that had either treated me, or refused me medical care and treatment due [to] their in-house policy." Id. at 28, ¶ 19. Nevertheless, plaintiff gave Birrell "as much of the information as I could remember which was enough since my appeal was accepted and processed by the Appeals Coordinator." Id. at 29, ¶ 24.[1]

Plaintiff has included the putative verified declaration of inmate Birrell. See n.3, infra.

---

[1] In his opposition to the motion for summary judgment filed by defendant Mathis, plaintiff further explains, ECF No. 33 at 9, 13:

> On September 20, 2012, Plaintiff through the MAC Special Representative, submitted the inmate appeal related to the deliberate indifference involved in this case. At that particular time, this plaintiff was so "screwed-up" due to the unrelenting pain, discomfort and lack of sleep that these symptoms caused him, that it took over an hour for the MAC Representative to obtain enough information so as to be able to actually write out the appeal in such a manner that it would in fact be accepted by the appeals coordinator at that time, Ms. A. Looney. . . . Had the plaintiff known the actual names of defendants Mathis and Daszko at the time that the appeal was written with the assistance of the MAC Special Representative, Birrell, these names would have been placed in the appeal.
>
> Plaintiff . . . was so seriously damaged from being attacked and cooked alive that he was unable to write his own appeal and had to call upon the Men's Advisory Council to send the "Special Representative" to plaintiff's dormitory to write the appeal for him.
>
> And even when Inmate Birrell arrived at Plaintiff's house and attempted to obtain the necessary information for the appeal from Plaintiff, the pain and lack of sleep that this Plaintiff was suffering from caused the encounter to take over an hour before Inmate Birrell was finally able to obtain enough information to be able to write the appeal and then help plaintiff submit the appeal for processing.

Birrell avers that he assisted plaintiff while serving as the "Special Representative" for the MAC, whose primary function was to assist in the preparation of appeals for CMF inmates "who, for whatever reason(s) were unable to write or process their own[.]" Birrell Decl., ECF No. 33 at 31-2, ¶¶ 2-3. Birrell has assisted other inmates with administrative appeals for the last 35 years. Id. at ¶ 3. Birrell avers in pertinent part, id. at ¶¶ 5-10, 14 (with minor edits):

> [O]n September 15, 2012, I was instructed by the MAC Chairman to go to I-1 Housing Unit and see an Inmate Hilliard Williams who had been the victim of an unprovoked attack and who wanted to file an administrative appeal concerning the lack of medical care or treatment that he had been receiving since being attacked.
>
> On September 16, 2012, I . . . met with the plaintiff. . . . I observed that [plaintiff's] right arm, face and most of his upper body was burned, severely, and he appeared to be in extreme discomfort and pain while I was with him, drifting in and out of sleep or semi-consciousness. Williams had great difficulty maintaining his focus and providing the necessary information that I required in order to the write the 602 Inmate Appeal for [him].
>
> [A]fter approximately one hour, I was able to obtain all the information that Williams had at that time concerning his issues appearing in his 602-HC. Unfortunately Williams could not remember or provide the names of the medical staff involved in the denial of his medical treatment. . . . [B]ased upon what I was finally able to obtain from Williams regarding the issue of lack of adequate pain medications, I was at last able to write his appeal which I then did, had Williams sign, date and then I sent the appeal to the appeals coordinator for processing on Sept. 20, 2012.
>
> … [T]he appeals coordinator accepted Inmate Williams' appeal, screened it and then accepted it as a proper and adequate appeal providing the necessary notice to the institution as well as the medical department[.]

IV. Undisputed Facts

The following facts concerning the submission and exhaustion of plaintiff's relevant administrative appeal are undisputed by the parties:

1. Plaintiff Hilliard Williams was, at all times relevant to this action, a state prisoner under the authority of the California Department of Corrections and Rehabilitation ("CDCR"), incarcerated at the California Medical Facility ("CMF").

2. The only health care appeal relevant to plaintiff's medical treatment arising from the attack on him by another inmate on September 7, 2012, was Health Care Appeal Log No. CMF

1  HC 12037206.[2]

2      3. This appeal was signed by plaintiff on September 20, 2012, and file-stamped received

3  on September 25, 2012.

4      4. This appeal was granted in full on First Level Review on October 16, 2012.

5      5. This appeal does not name either defendant.

6      V.    <u>Legal Standards</u>

7          A.    <u>Legal Standards for Summary Judgment</u>

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." <u>Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation)</u>, 627 F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing

---

[2] <u>See</u> Declaration of W. Harris, CMF Health Care Appeals Coordinator, and exhibits thereto, ECF No. 19-5 through 19-7; and Declaration of D. Davis, CMF Custody Appeals Coordinator, ECF No. 19-4. However, it appears that plaintiff did not exhaust his appeal alleging that prison officials failed to protect him from the September 7, 2012 assault. As stated by D. Davis, ECF No. 19-4 at ¶¶ 9-10:

> The only [custody appeal] that relates to the attack on plaintiff by another inmate that occurred on or about September 7, 2012 is Appeal CMF-M-12-02361 (although it does not relate to plaintiff's medical treatment; rather, the failure to prevent the attack from happening in the first place). A true and correct copy of this appeal is attached as Exhibit "B."
>
> Appeal CMF-M-12-02361 was received by the Appeals Office on or about September 17, 2010. The first level of review was bypassed, and it was granted in part at the second level of review on or about October 29, 2012. Although plaintiff was instructed that in order to exhaust his administrative remedies, he would have to submit the appeal to the third level, Plaintiff did not do so. A true and correct copy of the institution's second level response to Appeal CMF-M-12-02361 is attached as Exhibit "C."

9

1  that such materials "do not establish the absence or presence of a genuine dispute, or that the

2  adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56

3  (c)(1)(A), (B).

4  When the non-moving party bears the burden of proof at trial, "the moving party need

5  only prove that there is an absence of evidence to support the nonmoving party's case." Oracle

6  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

7  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

8  against a party who fails to make a showing sufficient to establish the existence of an element

9  essential to that party's case, and on which that party will bear the burden of proof at trial. See

10 Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the

11 nonmoving party's case necessarily renders all other facts immaterial." Id. In such a

12 circumstance, summary judgment should be granted, "so long as whatever is before the district

13 court demonstrates that the standard for entry of summary judgment ... is satisfied." Id. at 323.

14 If the moving party meets its initial responsibility, the burden then shifts to the opposing

15 party to establish that a genuine issue as to any material fact actually does exist. See Matsushita

16 Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the

17 existence of this factual dispute, the opposing party may not rely upon the allegations or denials

18 of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

19 admissible discovery material, in support of its contention that the dispute exists. See Fed. R.

20 Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. Moreover, "[a] [p]laintiff's verified complaint

21 may be considered as an affidavit in opposition to summary judgment if it is based on personal

22 knowledge and sets forth specific facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122,

23 1132 n.14 (9th Cir. 2000) (en banc).[3]

---

[3] In addition, in considering a dispositive motion or opposition thereto in the case of a pro se plaintiff, the court does not require formal authentication of the exhibits attached to plaintiff's verified complaint or opposition. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment); see also Aholelei v. Hawaii Dept. of Public Safety, 220 Fed. Appx. 670, 672 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary judgment, "which consisted primarily of litigation and administrative documents involving another prison

1  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that
2  might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby,
3  Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809
4  F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a
5  reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers,
6  Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

7  In the endeavor to establish the existence of a factual dispute, the opposing party need not
8  establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
9  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
10  trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce
11  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
12  Matsushita, 475 U.S. at 587 (citations omitted).

13  In evaluating the evidence to determine whether there is a genuine issue of fact," the court
14  draws "all reasonable inferences supported by the evidence in favor of the non-moving party."
15  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam).
16  It is the opposing party's obligation to produce a factual predicate from which the inference may
17  be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),
18  aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing
19  party "must do more than simply show that there is some metaphysical doubt as to the material
20  facts. … Where the record taken as a whole could not lead a rational trier of fact to find for the
21  nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation
22  omitted).

23  In applying these rules, district courts must "construe liberally motion papers and
24  pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly."
25  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). However, "[if] a party fails to properly

---

and letters from other prisoners" which evidence could be made admissible at trial through the other inmates' testimony at trial); see Ninth Circuit Rule 36-3 (unpublished Ninth Circuit decisions may be cited not for precedent but to indicate how the Court of Appeals may apply existing precedent).

11

1  support an assertion of fact or fails to properly address another party's assertion of fact, as
2  required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion
3  . . . ." Fed. R. Civ. P. 56(e)(2).

                B.        <u>Legal Standards for Exhausting Prisoner Administrative Remedies</u>

The Prison Litigation Reform Act (PLRA) requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions. 42 U.S.C. § 1997e(a). Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as some remedy remains available. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." <u>Brown v. Valoff</u>, 422 F.3d 926, 935 (9th Cir. 2005) (original emphasis) (citing <u>Booth v. Churner</u>, 532 U.S. 731, 739 (2001)). Hence, "[a]n inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies." <u>Harvey v. Jordan</u>, 605 F.3d 681, 685 (9th Cir. 2010).

The PLRA also requires that prisoners, when grieving their appeal, adhere to CDCR's "critical procedural rules." <u>Woodford v. Ngo</u>, 548 U.S. 81, 91 (2006). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." <u>Jones v. Bock</u>, 549 U.S. 199, 218 (2007).

In California, CDCR regulations permit a prisoner to grieve or "appeal" any action or inaction by prison staff that has "a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). A prisoner commences a health-related appeal by submitting a CDCR Form 602-HC ("Patient/Inmate Health Care Appeal") that "describe[s] the specific issue under appeal and the relief requested." <u>Id.</u> § 3084.2(a). The form limits the prisoner to "one issue or related set of issues" and "to the space provided." <u>Id.</u> § 3084.2(a)(1), (2). The form directs that the prisoner "shall list all staff member(s) involved and describe their involvement in the issue." <u>Id.</u> § 3084.2(a)(3). This instruction further provides, <u>id.</u>:

12

> To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

See also, the California Correctional Health Care Services (CCHCS) Manual, Inmate Medical Services Policies & Procedures, Vol. 1 (Governance and Administration), Chap. 8 (Health Care Appeal Tracking Program) (applying these regulations to Health Care appeals), at Section II-A.

The Ninth Circuit Court of Appeals recently held that if a prisoner fails to comply with a prison's procedural requirements in pursuing his appeal but prison officials address the merits of the appeal nevertheless, then the prisoner is deemed to have exhausted his available administrative remedies. See Reyes v. Smith, __ F. 3d __, 2016 WL 142601, 2016 U.S. App. LEXIS 433 (9th Cir. Jan. 12, 2016) (Case No. 13-17119). As stated by the Court of Appeals, "if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process," then the prisoner has exhausted "such administrative remedies as are available" under the PLRA. Reyes, 2016 WL 142601, at *3, 2016 U.S. App. LEXIS 433, at *9.

The Ninth Circuit has laid out the analytical approach to be taken by district courts in assessing the merits of a motion for summary judgment based on the alleged failure of a prisoner to exhaust his administrative remedies. As set forth in Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014), cert. denied sub nom. Scott v. Albino, 135 S. Ct. 403 (2014) (citation and internal quotations omitted):

> [T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy. . . . Once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. However, . . . the ultimate burden of proof remains with the defendant.

13

If a court concludes that a prisoner failed to exhaust his available administrative remedies, the proper remedy is dismissal without prejudice. See Jones v. Bock, 549 U.S. 199, 223-24 (2010); Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

### VI.   Analysis

Defendants contend that this action should be dismissed because plaintiff's appeal failed to name either defendant and therefore failed to comply with the CDCR regulation directing prisoners to name the staff members whose conduct is challenged, or "provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." Cal. Code Regs. tit. 15, § 3084.2(a)(3). Defendants rely on district court cases, decided before Reyes, supra, which concluded that the failure of a prisoner to name a prison official in the underlying appeal rendered the appeal unexhausted as to that official.

However, the circumstances of the instant case are similar to those presented in Reyes. There the plaintiff's administrative grievance challenged changes to his prescription pain medication regimen, which included morphine, for his degenerative spine condition. The regimen was originally prescribed by plaintiff's physician and approved by the prison's Pain Management Committee. Later that same year, plaintiff's physician informed him that, at the direction of Chief Medical Officer Dr. Heatley and Chief Physician and Surgeon Dr. Smith, both on the prison's Pain Management Committee, plaintiff's pain medication would be gradually reduced and discontinued. Plaintiff filed an appeal challenging these changes and asserting that he was in "unbelievable pain," without identifying either Dr. Heatley or Dr. Smith. The appeal was denied and exhausted at the third level, each time in deference to the assessments of the Pain Management Committee. Plaintiff then brought an action alleging, inter alia, deliberate indifference by Dr. Heatley and Smith. The district court dismissed the action on the ground that neither physician had been named in plaintiff's appeal and therefore his claims against those physicians were unexhausted.

The Ninth Circuit Court of Appeals reversed, initially recounting the purposes of the PLRA exhaustion requirement:

> The   PLRA   attempts   to   eliminate   unwarranted   federal-court

14

> interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. Requiring exhaustion provides prison officials a fair opportunity to correct their own errors and creates an administrative record for grievances that eventually become the subject of federal court complaints. Requiring inmates to comply with applicable procedural regulations furthers these statutory purposes.

Reyes, 2016 WL 142601, at *2, 2016 U.S. App. LEXIS 433, at *6 (internal citations and quotation marks omitted). The Court of Appeals reasoned, however, that "when prison officials address the merits of a prisoner's grievance instead of enforcing a procedural bar, the state's interests in administrative exhaustion have been served. Prison officials have had the opportunity to address the grievance and correct their own errors and an administrative record has been developed." Id., 2016 WL 142601, at *2, 2016 U.S. App. LEXIS 433, at *7. Stated differently, the Court found:

> When prison officials opt not to enforce a procedural rule but instead decide an inmate's grievance on the merits, the purposes of the PLRA exhaustion requirement have been fully served: prison officials have had a fair opportunity to correct any claimed deprivation and an administrative record supporting the prison's decision has been developed. Dismissing the inmate's claim for failure to exhaust under these circumstances does not advance the statutory goal of avoiding unnecessary interference in prison administration. Rather, it prevents the courts from considering a claim that has already been fully vetted within the prison system.

Reyes, 2016 WL 142601, at *3, 2016 U.S. App. LEXIS 433, at *8-9 (citations omitted).

In the instant case, plaintiff's appeal was granted, and therefore exhausted, at the first level. See Harvey, 605 F.3d at 685; Brown, 422 F.3d at 936. Although defendants were not named in the appeal, the appeals coordinator accepted the appeal for review, and CMF rendered a decision on the merits. With this decision, CMF addressed plaintiff's complaint internally, corrected its own error, and created an administrative record, thus meeting the statutory purposes of the PLRA's exhaustion requirement. See Reyes, 2016 WL 142601, at *2-3, 2016 U.S. App. LEXIS 433, at *6-9. Therefore, under Reyes, defendants are estopped from asserting that plaintiff failed to exhaust his administrative remedies due to procedural error. Accord, Torres v. Diaz, 2016 WL 374457, at *16, 2016 U.S. Dist. LEXIS 11773, at *42-44 (E.D. Cal. Feb. 1, 2016)

(Case No. 1:14-cv-0492 DAD SAB P) (findings and recommendations); <u>Quezada v. Cate</u>, No. 2016 WL 146118, at *3, 2016 U.S. Dist. LEXIS 4357, at *6-7 (E.D. Cal. Jan. 13, 2016) (Case No. 1:13-cv-00960 AWI MJS P) (findings and recommendations).

On this ground alone, defendants' motions for summary judgment should be denied.

Moreover, under the circumstances of this case, it is also reasonable to conclude that plaintiff's appeal satisfied CDCR's procedural requirements insofar as his allegations were sufficient to "assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." Cal. Code Regs. tit. 15, § 3084.2(a)(3). Several factors compel this result.

First, plaintiff's appeal begged for an immediate response.[4] Plaintiff's description of his injuries and his ongoing pain ("severe pain," "a hell of unrelenting, agony of pain and anguish," "needlessly suffering," <u>see</u> Compl., ECF No. 1 at 24, 26), clearly informed the appeals coordinator that plaintiff had a credible, serious and immediate medical problem.

Second, the alleged reasons for plaintiff's unmet treatment needs – deference to prison policy and the extended absence of plaintiff's primary care physician – could have been quickly and easily verified.

Third, in light of the limited nature of plaintiff's requested relief and the short periods of time during which he alleged denial of that relief,[5] it appears that a "reasonable attempt" by the

---

[4] CDCR regulations authorize the expedited processing of a designated "emergency appeal," <u>see</u> Cal. Code Regs. tit. 15, § 3084.9 (appeals reflecting, inter alia, "[s]erious and imminent threat to health or safety"); <u>see also</u> CCHCS Manual, Vol. 1, Chap. 8, § III-E. Although it is not clear on this record (and assuming the accuracy of the dates in the complaint), the only reasonable explanation for the appeals coordinator to process plaintiff's appeal as a routine, rather than emergency, matter, is that the coordinator was aware that plaintiff "ran into" Dr. Wieland on September 24, 2012 (the day before the appeal was file-stamped received), who "immediately took over plaintiff's medical care and treatment and immediately provided plaintiff some much needed pain relief by increasing his prescribed pain medication." <u>See</u> Compl., ECF No. 1 at ¶¶ 36-7.

[5] Review of plaintiff's allegations together with his medical record would have revealed that plaintiff alleged denial of adequate pain medication for the following periods: (1) upon his return to prison from the U.C. Davis Burn Center on September 7, 2012, through his admittance to the U.C. Davis Burn Center as an in-patient on approximately September 11, 2012, a period of four days; and (2) upon his return to prison one week later, approximately September 18, 2012,

1  appeals coordinator, see § 3084.2(a)(3), could have identified the medical providers who refused
2  plaintiff's requests for additional pain medication.  Indeed, plaintiff alleges that Dr. Wieland,
3  upon review of plaintiff's medical record, readily identified defendants as the doctors who denied
4  plaintiff's requests for adequate pain medication.  See Pl. Decl., ECF No. 33 at ¶¶ 21-3.

These factors support a finding that plaintiff's appeal complied with CDCR's procedural requirements.  This finding, together with the fact that plaintiff obtained his requested relief at the first level, establish that defendants have not carried their burden of demonstrating that plaintiff failed to exhaust his available administrative remedies.  Albino, 747 F.3d at 1172.

Accordingly, both pursuant to Reyes and pursuant to this court's construction of plaintiff's appeal under Albino, this court recommends that defendants' motions for summary judgment on failure-to-exhaust grounds be denied.

VII.   Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Defendant Mathis' motion to strike plaintiff's surreply, ECF No. 36, is denied.

2. Defendant Daszko's request to submit further briefing in response to plaintiff's surreply, ECF No. 35 at 4, is denied.

Further, IT IS HEREBY RECOMMENDED that:

1. The motion for summary judgment filed by defendant Mathis, ECF No. 19, be denied.

2. The motion for summary judgment filed by defendant Daszko, ECF No. 21, be denied.

3. This action should proceed on plaintiff's Eighth Amendment claims against defendants Mathis and Daszko.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

---

through the date he signed his appeal (September 20, 2012), or the date it was designated received (September 25, 2012).

failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 5, 2016

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE